Case No. 12-1341, Roman Lopez Petitioner v. Postal Regulatory Commission Mr. Burgess for the amicus curiae, Ms. McNeil for the respondent Good morning. Good morning, Your Honor. Brian Burgess on behalf of the Court appointed amicus in support of the petitioner, Roman Lopez. This case arises from, at one level, a dispute about mail delivery, but it also implicates important questions of administrative law, including how the voluntary cessation doctrine applies to the administrative context. In this Court's order appointing us as an amicus, it specifically asks us to address the issue of jurisdiction, so I'll briefly begin there. I note that it appears that the government agrees with us that the Court does have jurisdiction in this case. 3663 provides that any person who is adversely affected or aggrieved by a final order of the Postal Regulatory Commission can bring an action within this Court. Mr. Lopez brought a complaint under 3662 about the disruption of his mail service. There's no dispute that it was proper to bring that action within the Postal Regulatory Commission. In fact, it has exclusive jurisdiction over those sorts of complaints. He was adversely affected by the Commission's decision to dismiss his complaint, which was also clearly a final order of the Commission, because it ended the matter. It fully resolved the Commission's consideration of the issue. So we think on the plain text of the statute, this Court has jurisdiction. So how is he aggrieved with respect to the aspect of his petition that requested that his mail service be resumed? Because that was resumed, right? It was resumed, so we think that that goes to our challenge about whether the Commission acted arbitrarily and capriciously in this case. The fact that the Commission held that there was a jurisdictional problem there, that the complaint had become moot, and so it dismissed his action, doesn't bar this Court's jurisdiction to decide whether the Commission erred in that regard. And we cite in our briefs, in these sort of contexts in which an agency has decided whether a complaint has become moot in proceedings before it, it always applies the standard arbitrary and capricious standard. So this Court, the basis that the Commission relied on to make a decision, he is aggrieved because he filed a complaint. He was seeking relief, and rather than providing an order granting him that relief, the Commission dismissed his complaint. There is an argument, and I can go into it, about whether the Commission was arbitrary and capricious in that regard to dismiss it. But we don't think that that fact can affect whether this Court has jurisdiction under 3663. The others, just to finish the jurisdiction point, the other potential wrinkle is the fact that Mr. Lopez brought a claim for monetary damages, which I'll agree that was not properly before the Commission, and this Court does not have jurisdiction to address. But we don't think that that can affect whether the Court has jurisdiction to review the claim that clearly is properly before it. The proper course there is simply to sever that aspect of the action, and as we've known in the brief, it can be transferred under 1631 to a district court to bring that PCA claim. So why isn't the proper resolution to do precisely that and remand that to the district court with respect to his claim for money damages and dismiss the remainder of his petition? So we're fully in accord with the first part of that. We do think that that is the proper way to handle the claim for damages. I'll agree that it was not properly presented in the Commission. All agree that the Court has authority to transfer it under 1631. The Government's only arguments in this regard is that transfer would be futile because they think the claim is frivolous. We've argued why there are at least substantial arguments of why they could go forward. So we completely agree with that aspect of the resolution. As to the first, the other part of it in terms of the Commission's decision that the claim is moved, we think that that was arbitrary and capricious because the Commission relied exclusively on the Government's voluntary cessation of its conduct that was expressed in an informal letter by the Postal Service indicating that they would recommence delivery until they stopped it again. We don't think that sort of a commitment meets the Government's heavy burden to establish voluntary cessation. What would be a permissible commitment? In other words, what would they have to say? Well, a couple of things. I think there are things that could have been more robust such as providing for a certain level of oversight. So the nature of Mr. Lopez's complaint is that the Government claimed that his house was vacant. He denies that that was ever the case and makes certain assertions and allegations backed up in declarations that this might have been in part the result of discriminatory conduct. There are no findings by the Commission to the contrary. So the concern is that given that the past problem was by Postal Service workers on the ground making determinations, to just put it back in their hands was inadequate. I take that point, but it seems like the Postal Service, all they can say is we're going to deliver the mail to the home unless mail piles up there that shows that no one actually is at home for some period of time. I don't know what more they could necessarily say than that. Well, as I understand their letters and their regulations in this regard, there's no real guidance on what happens to determine that a house has become vacant. There are processes in place for once that determination is made, they have to hold the mail for 10 days and initiate a change of address. We think there could have been more conditions built in such that rather than the individual Postal Service worker being able to make this determination in his or her own discretion, that if supervisors were able to sort of review that determination, maybe if an inquiry were made with Mr. Lopez to verify that in fact his house had become vacant. We think it's also possible, you know, I'm an amicus so I feel able to say this, if the Commission had made a determination that his allegations were incorrect, that in fact his house had been vacant but now it no longer was, or that he had made allegations of discrimination but those were unfounded, that would certainly go to the question of whether the Postal Service's insistence that, okay, now we know that it's not vacant so we're going to restore mail, that would be much more credible and might go a long way to sort of satisfying voluntary cessation. But there just aren't those sorts of findings in the record. As the case came to the Commission and as it comes to the court, there are unrebutted allegations that despite the fact that his home, he says, was never vacant, that he tried over a number of years to convince the Postal Service of that fact. You know, in the record prior to before he brought his complaint, there are- So is your point that other than a letter of apology, and I know you want affidavits, et cetera, but the Postal Service has represented its restored service and it will continue to provide service until circumstances change? That's right. And we're not dealing with the damages issue and the legal question associated with that, or maybe we are, which I'll get to in a moment, but it's his point that his allegation about discrimination, and I'm not sure I understood it other than that the mailman who delivers to his house doesn't like him for some reason. Now, I'm serious about that. I don't know, is it racial, ethnic, or what is it? And I thought that was the reason that the commission could validly not address those issues because they're so vague and conclusory. I mean, maybe they just don't like each other as distinct from a legal discrimination that would adversely affect the delivery of his mail. Sure. So two points in response to that. One, this is at page 36 of the appendix, where he does say that he believes there was discrimination on the basis of his status of being incarcerated and possibly ethnic discrimination. Possibly. I take Your Honor's point, but there is nothing in the commission's decision to indicate that it made a determination on that or discredited it. But my point is we have all these cases about these vaguely made allegations. I mean, it's up to plaintiffs to spell out what he's talking about at some point. Sure. If you look at what the Postal Service is, if you look at their motion to dismiss, and I think this is on page 44 through 46 of the appendix, they make alternative arguments. They make the arguments sort of that Your Honor was postulating, that there is no basis for this complaint, and under our standard procedures it should simply be dismissed. Alternatively, and they specifically use the word alternatively, this case is now moved because we promised to restore service. The commission in its decision on page 50 of the appendix relies exclusively on that second determination, exclusively on mootness, and crucially uses mootness in what seems to be the ordinary sense of the word. The government makes arguments that, well, the commission has more discretion than an Article III court to decline to adjudicate a case, even if it might have become, even if it has not become formally moot. But there's just no indication that the commission is exercising that sort of authority. Can I ask you a question on the damages part of this, which is, do you agree, first of all, with the law that we shouldn't transfer if that would be futile? We don't take issue with that. Okay. And the next question is, why isn't it futile given the text of 2680B? Sure. So that provision, you know, the postal exception, provides an exception for loss, miscarriage, or negligent transmission of the mail. And we think, as Judge Bates indicated in his Colbert opinion, that there is, at the very least, a narrow gap that you can fit through there. Negligent transmission, sort of there's an implicit implication that if it's not negligent, that that might not be covered by the statute. We think Mr. Lopez's complaint falls within that scope. He's not arguing that the Postal Service lost his mail. Wouldn't it be miscarriage, though? No, I don't think so. As that term is defined in the Supreme Court's Dolan opinion, miscarriage is when it's brought to the wrong place. You know, I address it to Jones, and it ends up going to Smith. But it's really any claim that you failed to deliver the mail in a timely manner to the right address, isn't that the? Well, I think that negligent has to be doing some work. If that's the understanding, and this is sort of just encompassing any sort of circumstance in which the mail was not delivered to the proper address, I don't know what work negligent will be doing. Right. So your point is that it would be different if it said any claim arising out of a loss, miscarriage, or transmission. Exactly right. Negligence there must do something. And, again, our burden here is minimal. All we need to show is that it is not frivolous. And the fact that there is a genuine textual question, and the fact that at least some courts have, albeit not in holdings as the government notes, but have indicated that there is at least a narrow gap in which these claims can fit through, we think is enough to suggest that this should be resolved by a court that actually has jurisdiction rather than this court, which I'll agree does not. All right, thank you. We'll hear from counsel for respondent. Good morning. Sonia McNeil for the government. The Commission reasonably determined that there was no need to order the Postal Service to do what it had already done. Judge Kavanaugh, as you put it, the Commission noted that the Postal Service had said all it could say and, in fact, all that Mr. Lopez had asked them to say. The specific relief that Mr. Lopez requested was the restoration of mail delivery to his home, and that's exactly what happened. And the Postal Service's representation today to the Commission was functionally identical to the representation that this court accepted in Middleman applying Article III principles as sufficient to render the case moot. Now, as we've explained in our brief, the Commission is not bound by Article III principles. There's no reason, and the amicus has not cited any case that would support the proposition, that by using the shorthand moot, the Commission intended to import the complex doctrinal structure of Article III jurisprudence with all of its highly technical concepts, much less determine how those concepts apply. It's a generous description. With regard to transfer, the Court should not transfer the case to district court because the claim is futile, and that's for a number of reasons. It's both because this claim is not one that the FTCA waives the government's sovereign immunity for... What about the negligent... I'm sorry to interrupt, but what about the negligent intentional distinction that counsel is drawing and saying, maybe that's not a winner, but that's at least not frivolous or... Well, I mean, the question, as this Court put it in Wilson, is whether or not the person seeking a transfer has proffered a substantial basis upon which to convince the other court of the validity of the claim. And the Supreme Court in Dolan explained that the loss or miscarriage of mail is the failure to deliver mail in a timely manner to the right address. And as the First, Second, Third, and Eighth Circuits have explained, that forecloses a claim that there was an intentional interference with the mail. I mean, here, I suppose Mr. Lopez's claim is that his mail went to the wrong address because it was returned to sender and not to him. One further point about... Well, the legal theory is broader than that. The facts may not be... The facts may be, as you say, who knows, but the legal theory that you're articulating would preclude even an intentional interference where the postal carrier said, I don't like this guy, I'm going to throw his mail into the sewer. And you would say still that that's barred. And the question is, is that so... Does that not even pass the bar of being more than frivolous? No, Your Honor. I mean, that result would be consistent with the Supreme Court's definition of loss and miscarriage in Dolan and with, as I mentioned, the decisions of the other circuits. That's considering intentional interference with the mail. With regard to the... Hasn't the Second Circuit come out in the opposite end, though, and said that intentional acts aren't covered by the exception? No, Your Honor. The Second Circuit, the more recent decision, expressly distinguished an earlier case which involved allegations that the mail was surreptitiously diverted by an intelligence agency, opened, returned to its envelope, and then delivered. Those facts are far afield from what we're dealing with here, of course. You had alternatives that you were going to articulate before I interrupted you, I think. Thank you, Your Honor. The claim is subpoenaed for the further reason that Mr. Lopez has never presented an FTCA claim to the Postal Service, which is where... is the entity that would need to deny the claim in order for him to have the ability to sue. Furthermore, Mr. Lopez has not identified the right defendant, nor has he explained why there's a state law analogy here. And the Supreme Court of Florida case that Amicus cites in its reply brief, there the court expressly distinguished the instance of a rogue employee who commits a bad act from systemic malfeasance by a carrier. Why isn't his complaints to the Postal Service, why don't they satisfy and affect the presentment requirement, particularly since it's pro se? Mr. Lopez's theory is that his complaints to the Postal Regulatory Commission is what satisfied the requirement to present. And that complaint, as the court can tell, which is on pages A2 and A3, is quite narrow and specific. Mr. Lopez makes clear that he believes his claim arises under the APA and the PAEA. And the Postal Service had no obligation to second-guess Mr. Lopez as to what he believed his theory of liability would be. I'm happy to answer any further questions. Thank you. Thank you. Thank you, Your Honor. Briefly, just a few points. My friend mentioned the Middleman decision from this court in terms of voluntary cessation context. I think one crucial difference there is there the representation was that in order for the government to reinstate its policy, it was going to have to go through a full APA notice and comment process, which is quite different from the situation here where nothing stopped the government from simply engaging in the same conduct that had led to Mr. Lopez's complaint in the first place. There was no sort of process that would stop that. Also on the mootness issue and the question of whether this article 3 concept should be read into the agency's decision, we did set a case to that point. Page 8 in our reply brief, the Eleventh Circuit's decision, which noted that in an instance in which the agency uses mootness in its ordinary sense, you take them at their word, that they are using a legal concept that has well-established meaning and you don't sort of get into the exercise of whether an agency might have had discretion to act apart from that. On the damages claim and first dealing with the FTCA exception, Judge Wilkins, you mentioned the Second Circuit, and my friend argued that it has sort of distinguished that. The case from the Second Circuit that was distinguished involved deliberate theft of the mail, which has been equated by some circuits to loss. Now, you could quibble about whether that fits within the loss section of 2680B, but that's not what Mr. Lopez is arguing here. Again, he's not arguing that this mail was lost or stolen. He's arguing that it was not transmitted, and intentionally so, and so that that should fit within the scope of the statute. Regarding the other sort of objections to whether there is a proper claim under the FTCA, we think all those are best addressed by the transferee court, including whether the sort of pleading could be amended to add the United States and have it relate back, including questions of Florida law. Under the venue provision for the FTCA, this would be going to a Florida court, so we think they're in a much better position to address whether there is a potentially valid claim under Florida state law. And as far as presentment, the regulations for the FTCA provide that if the complaint is provided to the wrong agency, it is supposed to be transferred. That's exactly what happened here. The Postal Service did get notice of Mr. Lopez's claim. It is true that he did not identify the right legal theory, but that isn't the requirement. The requirement is that he noted clearly that he had a claim for damages against the Postal Service, and crucially, and what distinguishes all the other cases that the government had relied on, is he presented some certainty. He said, I am entitled to $2,500 of consequential damages because of the effect that the non-transmission of mail has had on me. And I've lost various tax exemptions and had to incur various expenses. That's quite different from a sort of a generalized claim that occurs in the other cases of, I'm entitled to benefits. He requested damages. He gave some certainty. That claim was presented to the Postal Service on a timely basis, and it was then effectively denied. The Court has no further questions. Thank you. Mr. Burgess, you were appointed by the Court to represent Appellant, and we appreciate your assistance. Thank you.
judges: Rogers, Kavanaugh, Wilkins